

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARY JO C.,

                        Plaintiff,

       - against-

NEW YORK STATE AND LOCAL
RETIREMENT SYSTEM and
CENTRAL ISLIP PUBLIC LIBRARY,

                    Defendants.
--------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
**09 CV 5635 (SJF)(ARL)**

On December 23, 2009, plaintiff Mary Jo C. ("plaintiff") commenced this action pursuant

to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and New

York Executive Law § 296 ("state law") against defendants New York State and Local

Retirement System ("the State defendant") and the Central Islip Public Library ("the Library")

(collectively, "defendants"), alleging: (1) that the State defendant denied her a reasonable

accommodation for her mental disability in violation of Title II of the ADA by failing to waive

the requirements for applying for disability retirement benefits under Section 605 of the New

York State Retirement and Social Security Law ("NYRSSL"); and (2) that the Library denied her

a reasonable accommodation for her mental disability in violation of both Title II of the ADA

and state law by failing (a) to file an application for disability retirement benefits on her behalf as

permitted by Section 605(a)(2) of the NYRSSL and (b) to reclassify the termination of her

employment as a leave of absence. The State defendant moves pursuant to Rules 12(b)(1) and

(6) of the Federal Rules of Civil Procedure to dismiss the complaint against it for lack of subject

matter jurisdiction and failure to state a claim, respectively; and the Library moves pursuant to

1



Rule 12(b)(6) of the Federal Rules of Procedure to dismiss the complaint against it for failure to state a claim. For the reasons discussed herein, defendants' motions are granted in part and denied in part.

## I.    BACKGROUND

### A.    Factual Allegations[1]

Plaintiff is a fifty-eight (58) year old woman who has suffered from an unidentified mental illness since adolescence. (Complaint [Compl.], ¶¶ 1, 12). Between 1986 and November 2006, plaintiff intermittently worked as a librarian for various libraries on Long Island, including the Library. (Compl., ¶ 13). In 1988, plaintiff became a member of the State defendant. (Compl., ¶ 14). Plaintiff alleges that in or about November 12, 2006, the Library terminated her employment "as a result of behaviors that were symptomatic of her mental illness." (Compl., ¶¶ 16-17). According to plaintiff, "[a]s a result of behviors manifested by [her] that were symptomatic of her mental illness, libraries in Suffolk County communicated among themselves and agreed that [she] should not be hired as a librarian. In vernacular, [plaintiff] has been blackballed from working in the public library system in Suffolk County." (Compl., ¶ 40).

Plaintiff alleges that she would have been eligible for disability retirement benefits from the State defendant under Section 605 of the NYRSSL as a result of her mental illness if she had made a timely application for such benefits, i.e., within three (3) months from her last day of work. (Compl., ¶¶ 18, 19). According to plaintiff, her mental illness prevented her from

---

[1] The factual allegations are taken from the complaint and, although disputed by defendants, are presumed to be true for purposes of this motion only. They do not constitute findings of fact by the court.

"recogniz[ing] that state law required her to file her retirement benefits application within three (3) months of her last day of employment." (Compl., ¶ 20). Nonetheless, plaintiff alleges that during the intervening three (3) month period, her brother "attempted to take steps to assist [her] in obtaining benefits to which she was entitled," including speaking to the State defendant's disability retirement director, Theresa Shumway ("Shumway"). (Compl., ¶¶ 21, 22). According to plaintiff, Shumway informed her brother that the Library could file an application for disability retirement benefits on her behalf. (Compl., ¶ 23).

Plaintiff alleges that on or about February 11, 2007, her brother requested that the Library file for retirement benefits on her behalf. (Compl., ¶ 25). According to plaintiff, the Library denied her brother's request on or about February 12, 2007. (Compl., ¶ 26).

Plaintiff alleges that on or about February 13, 2007, her brother requested that the Library reclassify her termination as an unpaid leave of absence, but the Library also denied that request. (Compl., ¶¶ 27, 29).

Plaintiff alleges that she applied for disability retirement benefits in November 2007, when her clinical condition had improved. (Compl., ¶ 30). According to plaintiff, the State defendant denied her application based upon her failure to comply with the three (3) month filing deadline prescribed by Section 605(b)(2) of the NYRSSL. (Compl., ¶ 31).

Plaintiff alleges that on or about July 23, 2008, she "requested an accommodation under the [ADA] from [the State defendant] in the form of a waiver of the filing deadline." (Compl., ¶ 32). According to plaintiff, the State defendant "never formally responded" to that request. (Compl., ¶ 33). Meanwhile, plaintiff appealed the State defendant's denial of her application for disability retirement benefits, which was affirmed by the hearing officer. (Compl., ¶¶ 35, 37).



B.    Procedural History

On December 23, 2009, plaintiff commenced this action against defendants alleging: (1) that by failing to waive the requirements for filing of disability retirement benefits under Section 605 of the NYRSSL, the State defendant denied her a reasonable accommodation for her mental disability in violation of Title II of the ADA (first cause of action), (Compl., ¶ 44); and (2) that by failing (a) to file a disability retirement application on her behalf as permitted by Section 605(a)(2) of the NYRSSL and (b) to reclassify her termination as a leave of absence, the Library denied her a reasonable accommodation for her mental disability in violation of both Title II of the ADA and state law (second through fifth causes of action), (Compl., ¶¶ 46-52).  Plaintiff seeks: (a) judgment declaring that defendants violated Title II of the ADA and that the Library also violated state law; (b) (i) an injunction directing the State defendant to waive the three (3) month filing period under Section 605(b)(2) of the NYRSSL or, (ii) in the alternative, compensatory damages against the Library; and (c) attorney's fees and costs pursuant to 42 U.S.C. § 12205.  (Compl., "Wherefore" Clause).

The State defendant moves pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss the complaint against it for lack of subject matter jurisdiction and failure to state a claim, respectively; and the Library moves pursuant to Rule 12(b)(6) of the Federal Rules of Procedure to dismiss the complaint against it for failure to state a claim.


II.    ANALYSIS

A.    Rule 12(b)(1)[2]

---

[2]  Since a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction, see Sinochem International Co. Ltd. v. Malaysia International Shipping

1. Standard of Review

Federal courts are courts of limited jurisdiction, see Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 397 (2d Cir. 2009), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil, 545 U.S. at 552, 125 S.Ct. 2611 (holding that federal courts may not exercise jurisdiction absent a statutory basis); County of Nassau, N.Y. v. Hotels.com, LP, 577 F.3d 89, 91 (2d Cir. 2009) (holding that federal courts lack power to disregard the limits on their jurisdiction imposed by the Constitution or Congress). Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court sua sponte. See Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003); Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000); see also Henderson ex rel. Henderson v. Shinseki, 131 S.Ct. 1197, 1202 (Mar. 1, 2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. * * * Objections to subject matter jurisdiction * * * may be raised at any time."); Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region, 130 S.Ct. 584, 596, 175 L.Ed.2d 428 (2009) ("[s]ubject-matter jurisdiction, * * * refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." (internal quotations and citations omitted)). If a court lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); Arbaugh v.

---

Corp., 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007), I must necessarily decide the branch of the State defendant's motion seeking dismissal pursuant to Rule 12(b)(1) prior to rendering any determination on the branch of its motion seeking dismissal pursuant to Rule 12(b)(6), which requires a decision on the merits of the case.

Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009). The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. Hamm v. U.S., 483 F.3d 135, 137 (2d Cir. 2007); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

### 2.      Standing

The State defendant contends that plaintiff lacks constitutional standing to assert her ADA claim against it.

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (citing Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 [1975]). Constitutional standing determines "'whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Article III,' and is therefore 'entitled to have the court decide the merits of the dispute or of particular issues.'" Amnesty Intern. USA v. Clapper, ___ F.3d ___, 2011 WL 941524, at * 9 (2d Cir. Mar. 21, 2011) (quoting Warth, 422 U.S. at 498, 95 S.Ct. 2197). "[A] plaintiff must demonstrate standing for each claim and form of relief sought." Cacchillo v. Insmed, Inc., ___ F.3d ___, 2011 WL 1005427, at * 2 (2d Cir. Mar. 23, 2011) (quoting Baur v. Veneman, 352 F.3d 625, 642 n. 15 (2d Cir. 2003)). To meet the constitutional requirement of standing, a plaintiff must allege (1) an injury-in-fact, i.e., "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical," Carver, 621 F.3d at 225; (2) a "causal connection between the injury

6

and the conduct complained of," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); and (3) a likelihood that the injury alleged "will be redressed by a favorable decision," Id.; see also Arizona Christian School Tuition Organization v. Winn, 131 S.Ct. 1436, 1442 (Apr. 4, 2011); Monsanto Co. v. Geertson Seed Farms, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010) (holding that in order to establish Article III standing, a plaintiff must allege an "injury [that is] concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.") If a plaintiff lacks constitutional standing, the court has no subject matter jurisdiction to hear the claim. Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005). "The party invoking federal jurisdiction bears the burden of establishing the[] elements [of standing]." Lujan, 504 U.S. at 561, 112 S.Ct. 2130; see also Summers v. Earth Island Inst., 555 U.S. 488, 129 S.Ct. 1142, 1149, 173 L.Ed.2d 1 (2009) (holding that the plaintiff "bears the burden of showing that he has standing for each type of relief sought.")

### a.    Injury-in-Fact

The State defendant contends that plaintiff has no "legally protected interest" in receiving disability retirement benefits under state law because she failed to comply with a condition precedent for receiving such benefits, i.e., filing her application within the statutory time period.

The "critical question" in determining whether the plaintiff has alleged an "injury-in-fact" "is whether 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." Amnesty Intern., ___ F.3d ___, 2011 WL

941524, at * 9 (emphasis in original) (quoting Summers, 555 U.S. 488, 129 S.Ct. 1142, 1149). A "legally protected interest 'may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" Fulton v. Goord, 591 F.3d 37, 41 (2d Cir. 2009) (quoting Warth, 422 U.S. at 500, 95 S.Ct. 2197). "Accordingly, 'standing is gauged by the specific common-law, statutory or constitutional claims that a party presents.'" Id. (quoting International Primate Protection League v. Administrators of Tulane Educational Fund, 500 U.S. 72, 77, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991)).

Plaintiff's claim against the State defendant alleges a violation of Title II of the ADA, which provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA "provides 'remedies, procedures, and rights . . . to any person alleging discrimination on the basis of disability in violation of section 12132'* * *," Fulton, 592 F.3d at 42 (quoting 42 U.S.C. § 12133), and confers standing upon individuals to enforce the right to be free from disability-based discrimination by public entities. Id. Accordingly, plaintiff's allegation that she was "discriminatorily denied a reasonable accommodation for her disability in violation of her rights under [Title II of the ADA]," is sufficient to allege an "injury-in-fact" for Article III standing purposes. See, e.g. id.

The State defendant misconstrues plaintiff's claim against it. Although the State defendant may be correct that plaintiff has no legally protected interest in receiving disability retirement benefits under Section 605 of the NYRSSL, the legally protected interest implicated by plaintiff's claim against the State defendant is her right to be free from disability-based

discrimination with respect to her participation in, or receipt of benefits from, the State

defendant's disability retirement program. The State defendant does not explain why a violation

of that right, i.e., by failing to provide plaintiff with her requested accommodation of a waiver of

the statutory filing deadline, as distinct from any right to receive disability retirement benefits

under state law, does not create an injury-in-fact. See, e.g. Fulton, 591 F.3d at 42 (finding that

whatever the merit of the defendants' argument that the plaintiff had no "legally cognizable

interest in having her incarcerated spouse transferred" to a different prison facility, the plaintiff

had standing to pursue her ADA claim that the defendants' refusal to accommodate her disability

by transferring her spouse in order to allow her to participate in the visiting program deprived her

of her right to be free from disability-based discrimination). Accordingly, contrary to the State

defendant's contention, plaintiff meets the "injury-in-fact" requirement of constitutional

standing.


b. Causation

The State defendant contends that plaintiff has not demonstrated a causal connection

between her inability to obtain disability retirement benefits and its conduct because: (1) her

inability to obtain benefits was caused solely by her own nonperformance, i.e., her failure to

timely file an application for such benefits; and (2) its denial of her application was not

discretionary.

Generally, "causation is shown if the defendants' actions had a 'determinative or coercive

effect' on the action that produced the injury." Carver, 621 F.3d at 226 (quoting Bennett v.

Spear, 520 U.S. 154, 169, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)). Although "[t]he causal

9

chain can be broken where a plaintiff's self-inflicted injury results from his unreasonable decision to bring about a harm that he knew to be avoidable, * * * standing is not defeated merely because the plaintiff has in some sense contributed to his own injury. Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain." Amnesty International, ___ F.3d ___, 2011 WL 941524, at * 11 (internal quotations, alterations and citations omitted).

Again, the State defendant's contention misconstrues plaintiff's claim against it. Plaintiff's claim is that the State defendant refused to provide her with a reasonable accommodation in the form of a waiver of the statutory filing requirements for disability retirement benefits, thereby depriving her of her right to be free from disability-based discrimination. Thus, plaintiff has alleged a causal connection between the State defendant's conduct, i.e., its refusal to waive the statutory filing requirements, and her injury, i.e., her right to be free from disability-based discrimination with respect to her participation in, or receipt of benefits from, the State defendant's disability retirement program.

c.     Redressability

The State defendant contends that plaintiff's alleged injury cannot be redressed by a favorable decision from this Court because this Court is without authority to grant the injunctive relief requested by plaintiff requiring it to waive a filing requirement mandated by state law.

"To demonstrate redressability, a plaintiff must show the substantial likelihood that the requested relief will remedy the alleged injury in fact." Amnesty International, ___ F.3d ___, 2011 WL 941524, at * 16 n. 24 (internal quotations and citations omitted). However, "where

10

legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." Barnes v. Gorman, 536 U.S. 181, 189, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) (quoting Bell v. Hood, 327 U.S. 678, 684-85, 66 S.Ct. 773, 90 L.Ed. 939 (1946)); see also Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 70-1, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (holding that generally, "federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.") The question of whether judicial relief is available for a particular cause of action is a merits determination. See Davis v. Passman, 442 U.S. 228, 245, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

Since Title II of the ADA provides for a general right to sue for, *inter alia*, a failure to make reasonable accommodation, for which this Court may fashion any appropriate remedy, the issue of whether judicial relief is available to remedy the alleged discrimination by the State defendant is not appropriately addressed on a Rule 12(b)(1) motion on the pleadings. Accordingly, the branch of the State defendant's motion seeking dismissal of plaintiff's claim against it for lack of constitutional standing is denied.


3.    Sovereign Immunity

The Eleventh Amendment to the United States Constitution bars suits in federal court by private parties against a state or one of its agencies, absent consent to suit or an express statutory waiver of immunity. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 362, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Although the Eleventh Amendment generally does not bar suits against

state officials seeking prospective relief, see Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908); Conyers v. Rossides, 558 F.3d 137, 150 (2d Cir. 2009), that exception to Eleventh Amendment immunity is inapplicable to suits against the States and their agencies, which are barred regardless of the relief sought. Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); see also Wang v. Office of Professional Medical Conduct, New York, 354 Fed. Appx. 459, 461 (2d Cir. Nov. 13, 2009) (holding that under the doctrine of Ex Parte Young, the plaintiff may only seek prospective relief from the state by naming a state official, rather than the State or state agency directly); In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007) (accord).

Although a State may choose to waive its Eleventh Amendment sovereign immunity, its consent to suit "must be 'unequivocally expressed' in the text of the relevant statute" and may not be implied. Sossamon v. Texas 131 S.Ct. 1651, 1658 (Apr. 20, 2011). Moreover, Section Five of the Fourteenth Amendment to the United States Constitution authorizes Congress to abrogate states' sovereign immunity in order "to enforce the substantive rights guaranteed by the Fourteenth Amendment." Bolmer v. Oliveira, 594 F.3d 134, 146 (2d Cir. 2010) (citation omitted); see also United States v. Georgia, 546 U.S. 151, 154, 158-59, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006). Pursuant to such authority, "Congress has unambiguously purported to abrogate states' immunity from Title II [ADA] claims." Bolmer, 594 F.3d at 146 (citing 42 U.S.C. § 12202); see also Georgia, 546 U.S. at 154, 158-59, 126 S.Ct. 877. Accordingly, the Supreme Court has held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." Georgia, 546 U.S. at 159, 126 S.Ct. 877 (emphasis in

12

original). The Supreme Court, thus, established the following three (3)-step analysis for courts to use "in the first instance, on a claim-by-claim basis" to determine whether there has been a valid abrogation of sovereign immunity, thereby allowing a Title II ADA claim against a state defendant to proceed: (1) the court must first identify "which aspects of the State's alleged conduct violated Title II" of the ADA; (2) if a violation of Title II of the ADA is found, the court must next determine "to what extent such misconduct also violated the Fourteenth Amendment;" and (3) finally, if the alleged misconduct violated Title II of the ADA but not the Fourteenth Amendment, the court must then determine "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."[3] Georgia, 546 U.S. at 158-59, 126 S.Ct. 877.

### a.  Title II Violation

To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he or she is a "qualified individual with a disability" and (2) that he or she was excluded from participation in, or benefitting from, a public entity's services, programs or activities, or was otherwise discriminated against by that entity, (3) by reason of his or her disability. See Natarelli v. VESID Office, No. 10-77-CV, 2011 WL 1486085, at * 1 (2d Cir. Apr. 20, 2011); Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

### i.  Qualified Individual with a Disability

---

[3] Plaintiff concedes that the State defendant's failure to provide her with her requested accommodation does not violate the Fourteenth Amendment. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss [Plf. Mem.], p. 10).

### A. "Disability"

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment * * *." 42 U.S.C. § 12102(1).[4] The ADA further defines "major life activities" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

The complaint does not sufficiently allege that plaintiff has a "disability" within the meaning of the ADA. Although plaintiff alleges that she has suffered from an unidentified mental illness since adolescence, she does not allege any additional facts plausibly suggesting that such mental illness substantially limited one or more of her major life activities. Accordingly, plaintiff's complaint does not state a cognizable claim under Title II of the ADA. See, e.g. Tylicki v. St. Onge, 297 Fed. Appx. 65, 67 (2d Cir. Oct. 28, 2008) (finding that the plaintiff's complaint did not adequately plead a disability under Title II of the ADA where it contained no allegations describing how his supposed mental condition substantially limited a major life activity). Since the complaint does not state a plausible Title II ADA claim against the State defendant, there was no abrogation of the State defendant's sovereign immunity with respect to plaintiff's claim against the State defendant. See, e.g. Natarelli, 2011 WL 1486085, at * 2 (finding that the district court correctly determined at the first step of the Georgia analysis that the state conduct at issue did not violate Title II).

---

[4] Only the first definition is relevant in this case.

14

B.    "Qualified Individual"

Title II of the ADA defines "qualified individual with a disability" to mean "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, * * *, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).  The ADA's "use of the term 'qualified' suggests that [courts] must look not to the administration of the program for which the plaintiff is qualified, but rather its formal legal eligibility requirements." Henrietta D., 331 F.3d at 277 (citing 42 U.S.C. §§ 12131-32); see also Powell v. National Board of Medical Examiners, 364 F.3d 79, 87 (2d Cir. 2004) (finding that the plaintiff failed to demonstrate that she was a "qualified individual" within the meaning of the ADA where the facts suggested that she did not meet the essential eligibility requirements for participation in the defendant's program).  "When reviewing a challenge to the eligibility requirements of a program, a court must first review each eligibility requirement to determine whether or not the requirement is essential- which entails determining whether an accommodation is reasonable- and then must determine whether the individual has met those requirements that are essential." Castellano v. City of New York, 946 F.Supp. 249, 254 (S.D.N.Y. 1996), aff'd on other grounds, 142 F.3d 58 (2d Cir. 1998).

"An eligibility requirement will be essential- or an accommodation of it will be unreasonable- if its alteration either imposes undue financial and administrative burdens on the public entity or requires a fundamental alteration in the nature of the program." Castellano, 946 F.Supp. at 254 (internal quotations, alterations and citations omitted); see also 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or

15

procedures when * * * necessary to avoid discrimination on the basis of disability, unless [it] can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity."); 28 C.F.R. § 41.53 ("A [public entity] shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless [it] can demonstrate that the accommodation would impose an undue hardship on the operation of its program.")

Section 605 of the NYRSSL, pursuant to which plaintiff filed her application for disability retirement benefits, provides, in relevant part, that "[a]t the time of the filing of an application * * *, the member must: 1. Have at least ten years of total service credit, and 2. The application must be filed * * * (b) within three months from the last date the member was being paid on the payroll * * *." N.Y. Ret. and Soc. Sec. Law § 605(b). New York courts have interpreted a similar requirement in Section 62 of the NYRSSL to constitute "a condition precedent to the ripening of any rights" or entitlement to disability benefits, see Banks v. New York State and Local Employees' Retirement System, 294 A.D.2d 164, 165, 741 N.Y.S.2d 413 (1st Dept. 2002) (quoting Matter of Grossman v. McCall, 262 A.D.2d 923, 924, 692 N.Y.S.2d 775 (3d Dept. 1999)); Matter of Callace v. New York State Employees' Retirement System, 140 A.D.2d 756, 757, 528 N.Y.S.2d 175 (3d Dept. 1988) (holding that the statutory ninety (90)-day requirement "is a condition precedent to the existence of a substantive right to ordinary disability retirement"), and have specifically rejected the contention that the statutory filing period may be extended or waived by the State agency, even where the applicant claims that the disability giving rise to his or her claim for disability benefits also rendered him incapable of asserting his or her claim in a timely manner, see Grossman, 262 A.D.2d at 924; Callace, 140 A.D.2d at 757-

58. According to those New York courts, the State Legislature added the statutory filing requirement "to alleviate hardships created when members of the [State] Retirement System mistakenly terminate their service prior to filing for benefits," Grossman, 262 A.D.2d at 924, and, thus, any remedy of the burden imposed by the statutory time period "must lie with the Legislature." Id.; see also Callace, 140 A.D.2d at 758.

The cases upon which plaintiff relies for the proposition that "the duty to provide a reasonable accommodation under the ADA sometimes entails an obligation to act in contravention of a state statute," (Plf. Mem., p. 13), are inapposite. None of those cases involved a determination of whether the plaintiff met the essential eligibility requirements for participation in a particular program or service or whether waiver of an essential eligibility requirement for the receipt of services or benefits constituted a "reasonable accommodation" under the ADA, and all of those cases involved some exercise of discretion by the defendant. See McGary v. City of Portland, 386 F.3d 1259 (9th Cir. 2004) (involving the defendants' enforcement of a local nuisance ordinance against the plaintiff); Regional Economic Community Action Program, Inc. v. City of Middletown ("RECAP"), 294 F.3d 35, 53 (2d Cir. 2002) (involving a refusal by the defendants to grant the plaintiffs a special use permit); Oxford House, Inc. v. Town of Babylon, 819 F.Supp. 1179, 1185 (E.D.N.Y. 1993) (involving the application of a local zoning ordinance to evict the plaintiffs); Tsombanidis v. City of West Haven, 180 F.Supp.2d 262, 292-93 (D. Conn. 2001), aff'd in part and rev'd in part, 352 F.3d 565 (2d Cir. 2003) (involving enforcement of local zoning and land use ordinances against the plaintiffs); Oxford House, Inc. v. Township of Cherry Hill, 799 F.Supp. 450, 463 (D. N.J. 1992) (same). To the contrary, this case does not involve the exercise of any discretion on the part of the State defendant. Rather, state law, as

17

interpreted by the state courts, specifically precludes the State defendant from exercising any discretion to extend or waive the statutory filing period for the application of disability retirement benefits.

Thus, plaintiff's requested accommodation from the State defendant does not merely seek a reasonable modification of the State defendant's own rules, policies or practices over which it has discretion. Rather, plaintiff seeks a waiver of an essential eligibility requirement for receipt of disability benefits under NYRSSL § 605, which the State courts have determined the State defendant is without authority to grant. Requiring the State defendant to violate state law is not a reasonable accommodation as a matter of law. See, e.g. Herschaft v. New York Board of Elections, No. 00 CV 2748, 2001 WL 940923, at * 6 (E.D.N.Y. Aug. 13, 2001), aff'd on other grounds, 37 Fed. Appx. 17 (2d Cir. 2002) (finding that the plaintiff's requested accommodation of a two to three week extension of the six (6)-week time period within which to gather signatures for an independent nominating petition pursuant to New York Election Law § 6-138(4), which the Board of Elections had no statutory authority to waive, was "unreasonable simply because it would require the Board of Elections to violate a state statute * * *."); Aughe v. Shalala, 885 F.Supp. 1428, 1431-33 (W.D. Wash. 1995) (distinguishing cases requesting modification of a defendant's internal eligibility rules or policies from cases seeking waiver of a statutory requirement of which the defendant did not have authority to waive and finding that since the plaintiff's requested accommodation of a statutory age requirement "would essentially rewrite the statute, it must be seen as a fundamental alteration in the nature of the program * * * [and] could impose an undue financial burden on the program."). As held by Judge Amon in Herschaft, "an accommodation that would require a defendant to violate an otherwise

18

constitutional state law is inherently unreasonable."[5] 2001 WL 940923, at * 6.

Since plaintiff did not file her application for disability retirement benefits within three (3) months from the last date she "was being paid on the payroll," N.Y. Ret. Soc. Sec. Law § 605(b)(2)(b), she did not meet "the essential eligibility requirements for the receipt of" disability retirement benefits under NYRSSL § 605. Accordingly, plaintiff is not a "qualified individual with a disability" within the meaning of Title II of the ADA. Since plaintiff cannot state a cognizable Title II ADA claim against the State defendant, there was no valid abrogation of the State defendant's sovereign immunity from this suit. Therefore, pursuant to Rule 12(b)(1), the complaint is dismissed with prejudice as against the State defendant as barred by the doctrine of sovereign immunity.[6]

B.      Rule 12(b)(6)

        1.      Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests."

---

[5] Plaintiff does not challenge the constitutionality of NYRSSL § 605.

[6] To the extent that plaintiff seeks leave to amend her complaint to assert a claim seeking prospective injunctive relief against the Comptroller, in his official capacity as head of the State defendant, in order to avoid the Eleventh Amendment's bar to suit under the doctrine set forth in Ex Parte Young, her request is denied because any such amendment would be futile. Since, as a matter of law, plaintiff is not a "qualified individual with a disability," she cannot state a valid Title II ADA claim against the State defendant or its officials, including the Comptroller.

Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-20 (2d Cir. 2010)(accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010), cert. denied, 131 S.Ct. 824, 178 L.Ed.2d 556 (2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.") However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950; see also Ruston, 610 F.3d at 59 ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are

not entitled to the assumption of truth." (quotations and citations omitted)). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, 604 F.3d at 120-1; see also Matson, 631 F.3d at 63 ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation omitted)).

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)); see also DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010).

### 2. Article II of the ADA[7]

The Library contends that since plaintiff seeks benefits to which she would only be entitled by virtue of her employment relationship with it, her exclusive remedy is under Title I, not Title II, of the ADA.

Plaintiff's claims against the Library are: (1) that it did not timely file an application for

---

[7] For the reasons set forth above, plaintiff fails to satisfy the first element of a Title II ADA claim, insofar as she has not pled sufficient facts in her complaint plausibly suggesting that she is a "qualified individual with a disability." However, since the Library assumes this element for purposes of its motion, and since it would be possible for plaintiff to amend her Title II claims to sufficiently plead this element as against the Library unless those claims would otherwise be futile, I will address the Library's contention seeking dismissal of this claim on alternative grounds to determine whether any such amendment would be futile.

disability retirement benefits under NYRSSL § 605(a)(2), which allows "[t]he head of the department in which [the applicant] is employed" to file an application on behalf of its employee; and (2) that it did not reclassify its termination of plaintiff's employment as a leave of absence, which would have allowed her additional time to file her application for disability retirement benefits under Section 605(b)(2)(c) of the NYRSSL. Thus, plaintiff's claims against the Library clearly relate to her employment with that entity, as opposed to the programs and services the Library offers to the public at large.

As noted above, one of the elements required to state a claim under Title II of the ADA is that the plaintiff was excluded from participation in, or was denied the benefits of, a public entity's services, programs or activities, or was otherwise discriminated against by the public entity. See 42 U.S.C. § 12132; Henrietta D., 331 F.3d at 272. There is no dispute that the Library is a "public entity" within the meaning of Title II. See 42 U.S.C. § 12131(1) (defining "public entity" to include "(A) any State or local government; [and] (B) any department, agency, special purpose district or other instrumentality of a State or States of local government * * *.") However, courts are split over whether Title II of the ADA, entitled "Public Services," may give rise to claims of employment discrimination by a public employer, or whether the exclusive remedy for such claims lies within Title I of the ADA.[8] Compare Zimmerman v. Oregon Department of Justice, 170 F.3d 1169 (9th Cir. 1999) (holding that Title II does not cover employment discrimination); Emmons v. City University of New York, 715 F.Supp.2d 394, 408

---

[8] Title I of the ADA, entitled "Employment," provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

(E.D.N.Y. 2010) (holding that Title I of the ADA "is the exclusive remedy for employment discrimination claims, even if the employer is a public entity"); Fleming v. State University of New York, 502 F.Supp.2d 324, 333-34 (E.D.N.Y. 2007) (finding that the language of the ADA clearly and unambiguously devoted Title I exclusively to employment discrimination claims); Ayantola v. Community Technical Colleges of State of Connecticut Board of Trustees, No. 3:05CV957, 2007 WL 963178, at * 2 (D. Conn. Mar. 30, 2007) (holding that Title II of the ADA does not apply to employment actions, which must be brought under Title I of that Act); with Bledsoe v. Palm Beach County Soil and Water Conservation District, 133 F.3d 816 (11th Cir. 1998) (holding that Title II does cover employment discrimination); Transport Workers Union of America, Local 100, AFL-CIO v. New York City Transit Authority, 342 F.Supp.2d 160 (S.D.N.Y. 2004) (accord); and Winokur v. Office of Court Administration, 190 F.Supp.2d 444, 449 (E.D.N.Y. 2002) (citing cases in this Circuit concluding that claims of employment discrimination are permitted under Title II).

To date, the Second Circuit has not expressly considered this issue, see Perry v. State Ins. Fund, 83 Fed. Appx. 351, 354 n. 1 (2d Cir. Dec. 3, 2003) (declining to reach the issue of whether Title II of the ADA covers employment discrimination); Mullen v. Rieckhoff, 189 F.3d 461 (1999) (unpublished opinion) (accord), although it has applied Title II of the ADA in employment discrimination actions where this issue was not raised, see, e.g. Olson v. New York, 315 Fed. Appx. 361 (2d Cir. Mar. 17, 2009); Castellano, 142 F.3d 58 (2d Cir. 1998), and it has interpreted Title II's anti-discrimination provisions to be "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context * * *," Innovative Health System, Inc. v. City of White Plains, 117 F.3d 37, 44-45 (2d Cir. 1997), overruled on other grounds by Zervos

v. Verizon New York, Inc., 252 F.3d 163, 171 n. 7 (2d Cir. 2001).

The Supreme Court also has not resolved this issue, although it has fairly recently used language implying that it would resolve the issue in favor of a finding that Title II does not cover employment discrimination. See Tennessee v. Lane, 541 U.S. 509, 516-7, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I * * *; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III.")[9]; PGA Tour, Inc. v. Martin, 532 U.S. 661, 675, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (accord); Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 360 n. 1 (2001) ("[N]o party has briefed the question of whether Title II of the ADA . . . is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject." (citing Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983))).[10]

Based upon the well-reasoned decisions of the most recent district court cases in this Circuit, as well as the aforementioned language in the Supreme Court cases, I find that Title I of the ADA is the exclusive remedy for plaintiff's claims of discrimination against the Library, all of which relate to the "terms, conditions, and privileges of [her] employment" with that entity.

---

[9] The Second Circuit has recognized this same distinction between the first three (3) titles of the ADA. See Henrietta D., 331 F.3d at 272.

[10] In Russello, the Supreme Court held that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." 464 U.S. at 23, 104 S.Ct. 296. Thus, it may be inferred by the Supreme Court's citation to Russello that it would deem Title II's omission of any employment language, when such language is expressly included in Title I of the ADA, to have been a purposeful exclusion and not a "simple mistake in draftmanship." Id.

42 U.S.C. § 12112(a). Accordingly, plaintiff's Title II ADA claims against the Library (second and third causes of action) are dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.[11]

### 3. State Law Claims

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, see Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 391-92, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384, 388 (2d Cir. 2000), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). See Carlsbad Technology, Inc. v. HIF Bio, Inc., 129 S.Ct. 1862, 1866-1867, 173 L.Ed.2d 843 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary). The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent state law claims. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); see also Kolari v. New York-Presbyterian Hospital, 455 F.3d 118, 122 (2d Cir. 2006). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350 n. 7, 108 S.Ct. 614;

---

[11] Plaintiff does not seek leave to amend her complaint to assert a Title I ADA claim, nor refute the Library's contention that she cannot state a valid Title I ADA claim because she failed to exhaust her administrative remedies with respect to any such claim as required by 42 U.S.C. § 12117(a).

New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 118-119 (2d Cir. 2007); Kolari, 455 F.3d at 122.

In light of the dismissal of all federal claims in this action at the pleadings stage, and upon consideration of all relevant factors , i.e., judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over plaintiff's remaining pendant state law claims. Accordingly, plaintiff's state law claims against the Library (fourth and fifth causes of action) are dismissed pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff is advised that pursuant to 28 U.S.C. § 1367(d), the statute of limitations for her state law claims, to the extent those claims were timely filed in this Court, is tolled for a period of **thirty (30) days after the date of this order**, unless a longer tolling period is otherwise provided under state law.

III.    Conclusion

For the reasons stated herein, defendants' respective motions to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure are granted to the extent set forth herein and the complaint is dismissed in its entirety. The Clerk of the Court shall enter judgment in favor of defendants and close this case.

SO ORDERED.

_____

SANDRA J. FEUERSTEIN
United States District Judge

Dated: May 5, 2011
        Central Islip, N.Y.