UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    DEC 1 8 2014    ★

LONG ISLAND OFFICE

------------------------------------------------------------X
MARY JO C.,

                                    Plaintiff,

        - against-

THOMAS P. DINAPOLI,

                                    Defendant.
------------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
**09-CV-5635 (SJF)(ARL)**

On December 23, 2009, plaintiff Mary Jo C. ("plaintiff") commenced this action against

the New York State and Local Retirement System ("the NYSLRS") and the Central Islip Public

Library ("the Library") pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42

U.S.C. §§ 12131, *et seq.*, and Section 296 of the New York Executive Law.  By opinion and

order dated May 5, 2011, I, *inter alia*, (1) granted the motion of the NYSLRS seeking dismissal

of plaintiff's claims against it pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure

to the extent of dismissing plaintiff's claims against the NYSLRS in their entirety as barred by

the doctrine of sovereign immunity; and (2) granted the Library's motion seeking dismissal of

plaintiff's claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to

the extent of (a) dismissing plaintiff's ADA claims against the Library for failure to state a claim

for relief and (b) dismissing plaintiff's state law claim against the Library pursuant to 28 U.S.C. §

1367(c)(3).  Judgment was entered against plaintiff on May 9, 2011.

By mandate entered February 26, 2013, the United States Court of Appeals for the

Second Circuit, *inter alia*, affirmed so much of the opinion and order as dismissed plaintiff's

ADA claim against the Library, but vacated so much of the opinion and order as dismissed plaintiff's ADA claim against the NYSLRS and remanded the action "with instructions * * * to grant the plaintiff leave to amend her complaint * * * to allege facts supporting her claim that she was disabled, and to attempt to state a claim invoking the rule of Ex parte Young, 209 U.S. 123 (1908), and for further proceedings consistent with [its] opinion." (Docket Entry ["DE"] 36 at 57). By order dated May 3, 2013, I granted the parties' joint motion to stay the proceedings in this case upon remand pending a determination by the United States Supreme Court on plaintiff's petition for a writ of certiorari to the extent of marking this case off of my calendar with leave to reopen on ten (10) days notice within thirty (30) days of the Supreme Court's determination. By order dated November 25, 2013, I granted plaintiff's application, in essence, for an extension of time to reopen this case to the extent of reopening this case, provided that plaintiff serve and file an amended complaint in accordance with the Second Circuit's mandate on or before December 16, 2013.

On December 9, 2013, plaintiff filed an amended complaint against Thomas P. DiNapoli ("DiNapoli" or "defendant"), in his official capacity as the New York State Comptroller, alleging, *inter alia*, (1) that by failing to waive the filing requirements for the filing of disability retirement benefits, the NYSLRS failed to provide a requested reasonable accommodation to plaintiff in violation of the ADA; and (2) that New York Retirement and Social Security Law § 605(b) violates the ADA, the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Between December 18, 2013 and April 28, 2014, defendant sought, on plaintiff's consent, four (4) extensions of time to file a response to the amended complaint, basing the last three (3) requests upon the parties' purported attempts to

2

resolve this action. (DE 44-46, 48). The Honorable Arlene R. Lindsay, United States Magistrate Judge, granted all of defendant's requests, ultimately granting defendant until May 5, 2014 to file a response to the amended complaint. (DE 12/19/2013, 01/31/2014, 02/26/2014 and 04/29/2014). In addition, defendant sought, on plaintiff's consent, to adjourn a status conference scheduled to be held before me on May 5, 2014 on the basis that "[t]he parties [were] attempting to resolve all issues in this action." (DE 47). By electronic order dated April 29, 2014, defendant's application was denied. However, by electronic order dated May 1, 2014, plaintiff's subsequent application to adjourn the May 5, 2014 status conference due to a death in her lead counsel's family was granted and the conference was adjourned until May 12, 2014.

During the May 12, 2014 conference before me, the parties advised, *inter alia*, that they resolved all issues in this action except for the issue of attorney's fees. A further pretrial conference was scheduled to be held before me on June 16, 2014. On June 11, 2014, plaintiff filed a joint application to adjourn the conference "to enable the parties to negotiate an agreement [on the issue of attorney's fees] over the next month." (DE 51). By electronic order dated June 12, 2014, the application was granted, the conference was adjourned until July 15, 2014 and the parties were advised that no further adjournments would be granted absent exceptional circumstances.

On July 11, 2014, plaintiff filed: (1) a stipulation and proposed order, *inter alia*, resolving the merits of the actions, but not the issue of attorney's fees, costs and disbursements, and unilaterally extending plaintiff's time to file an application seeking attorney's fees, costs and disbursements to "any time through September 15, 2014[,]" (DE 52, ¶ 4); and (2) an application to cancel the July 15, 2014 conference, (DE 53). By electronic order dated July 14, 2014, I

3

denied plaintiff's application to cancel the conference; directed plaintiff to file an application seeking attorney's fees at the conference on July 15, 2014; and advised that any application for attorney's fees filed by plaintiff after the conference would be dismissed with prejudice.

During the July 15, 2014 conference, *inter alia*, plaintiff submitted the application for attorney's fees; defendant was directed to serve and file any opposition to plaintiff's application by July 29, 2014; and plaintiff was directed to serve and file a reply to any opposition by August 12, 2014. Pending before me is plaintiff's motion for attorney's fees pursuant to 42 U.S.C. §§ 1988 and 12205. For the reasons set forth below, plaintiff's motion is granted to the extent set forth herein.

I.      DISCUSSION

Plaintiff seeks to recover ninety-seven thousand five hundred forty dollars and fifty cents ($97,540.50)[1] in attorney's fees based upon, *inter alia*: (a) an hourly rate of four hundred fifty

---

[1] In her original motion, plaintiff sought an award of attorney's fees in the amount of ninety-one thousand eight hundred twenty-five dollars and fifty cents ($91,825.50) "plus for additional work in further support of this motion [seeking attorney's fees], specifically anticipated reply papers and any court appearance." (Declaration of William M. Brooks ["Brooks Decl."], dated July 15, 2014, ¶ 2). In his reply declaration, Mr. Brooks inconsistently seeks both (a) an additional five thousand seven hundred fifteen dollars ($5715.00), for a total award of attorney's fees in the amount of ninety-seven thousand five hundred forty dollars and fifty cents ($97,540.50), (Brooks Reply, ¶ 2); and (b) an additional six thousand one hundred sixty-five dollars ($6,165.00), for a total award of attorney's fees in the amount of ninety-seven thousand nine hundred ninety dollars and fifty cents ($97,990.50). (Id., ¶ 16). Mr. Brooks claims that he worked an additional sixteen and eight-tenths (16.8) hours on this case, but concedes that he erroneously included billing entries totaling four and one-tenth (4.1) hours for work he performed solely pertaining to plaintiff's claims against the Library on the original motion. (Brooks Reply, ¶16). Accordingly, Mr. Brooks claims to have deducted the four and one-tenth (4.1) hours from the additional work he performed and "seeks attorney's fees for 13.7 [sic] hours of work * * * in the [amount of] $6, 165.00 [sic]." (Id.) Since, sixteen and eight-tenths (16.8) minus four and one-tenth (4.1) equals twelve and seven-tenths (12.7), which, when

4

dollars ($450.00) for services performed by William M. Brooks, the supervising attorney for the

Mental Disability Law Clinic of Touro College Jacob D. Fuchsberg Law Center ("Touro"), (b)

for one hundred ninety-six and nine-tenths (196.9)[2] hours expended by him on plaintiff's behalf

"on matters relating to the claims against the [NYSLRS][,]" (Brooks Decl., ¶ 2); (c) an hourly

rate of one hundred fifty dollars ($150.00) for services performed by Michael Recco, "a staff

attorney," (id., ¶ 14), (d) for fourteen and four-tenths (14.4) hours expended by him on plaintiff's

behalf in this case; and (e) an hourly rate of eighty-five dollars ($85.00) for services performed

by Deanna LaRocco, "a law student intern," (id.), (d) for seventy-nine and seven-tenths (79.7)

hours expended by her on plaintiff's behalf in this case.

Under the "American Rule" "historically applied" by courts in the United States, Arbor

Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir.

2008), "parties are ordinarily required to bear their own attorney's fees * * * absent explicit

statutory authority." Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and

Human Res., 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), superceded on other

grounds by Open Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524. As relevant

here, Congress has authorized the award of attorney's fees to the "prevailing party" in actions

---

multiplied by the four hundred fifty dollars ($450.00) hourly rate plaintiff seeks, equates to five thousand seven hundred fifteen dollars ($5,715.00), the Court presumes that is the actual amount of attorney's fees that plaintiff seeks.

[2] In plaintiff's original motion, Mr. Brooks claims to have expended one hundred eighty-four and two-tenths (184.2) hours on this case. As noted above, in his reply declaration, Mr. Brooks contends that he worked an additional sixteen and eight-tenths (16.8) hours on this case. (Brooks Reply, ¶ 16). However, the additional billing entries submitted by Mr. Brooks actually total eighteen and a half (18.5) additional hours, although four-tenths (.4) of an hour are billed for his travel time, for which he is only entitled to half his hourly rate. (Brooks Reply, Ex. A).

under, *inter alia*, the ADA and Section 1983. Specifically, Section 12205 of Title 42 of the United States Code provides, in relevant part, that "[i]n any action * * * commenced pursuant to this chapter, the court * * *, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee, including litigation expenses, and costs * * *." Similarly, Section 1988(b) of Title 42 of the United States Code provides, in relevant part, that "[i]n any action or proceeding to enforce a provision of section[] * * * 1983 * * * of this title, * * * the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs * * *."

In cases under federal statutes authorizing the court to award "a reasonable attorney's fee" to a prevailing private party, e.g., actions under the ADA, 42 U.S.C. § 12205; Titles II and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a-3(b) and 2000e-5(k), respectively; the Age Discrimination in Employment Act, 29 U.S.C. § 626(b); the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3613(c)(2); the Voting Rights Act Amendments of 1975, 42 U.S.C. § 1973.*l*(e); the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b); the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(3)(B)(i); the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), etc., "the governing principles and procedures are essentially the same." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009); see also Buckhannon, 532 U.S. at 603 n. 4, 121 S. Ct. 1835 ("We have interpreted the[] fee-shifting provisions [in Title VII, the Voting Rights Act Amendments of 1975 and Section 1988] consistently * * *.")

It is undisputed that plaintiff is a "prevailing party" in this action as against the NYSLRS, see generally Buckhannon, 532 U.S. at 603, 121 S. Ct. 1835, and, thus, may be awarded a reasonable attorney's fee under Sections 1988(b) and 12205 of Title 42 of the United States Code.

6

"In calculating attorney's fees, the district court must first determine the 'lodestar–the product of a reasonable hourly rate and the reasonable number of hours required by the case–[which] creates a presumptively reasonable fee.'" Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014) (brackets in original) (quoting Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)); see also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable [attorney's] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); Bergerson v. New York State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 289 (2d Cir. 2011) ("Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours.") The burden is on the fee applicant to submit evidence to support the number of hours expended and the rates claimed. Hensley, 461 U.S. at 437, 103 S.Ct. 1933.

A.      Reasonable Hourly Rate

In calculating a "presumptively reasonable [attorney's] fee,"[3] Arbor Hill, 522 F.3d at 190, courts must consider "*all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Id. (emphasis in original); see also Barfield v. New York City Health and Hosps. Corp., 537 F.3d 132, 151-52 (2d Cir. 2008) (accord). "[A] presumptively reasonable [attorney's] fee "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party

---

[3] In Arbor Hill, the Second Circuit abandoned the use of the term "lodestar" in favor of "the presumptively reasonable fee." 522 F.3d at 190.

7

wishes 'to spend the minimum necessary to litigate the case effectively.'" Simmons v. New York City Transit Authority, 575 F.3d 170, 174 (2d Cir. 2009) (quoting Arbor Hill, 522 F.3d at 184); see also Bergerson, 652 F.3d at 289-90 (accord).

In Arbor Hill, the Second Circuit held that in determining a reasonable hourly rate, district courts should consider, *inter alia*, the following twelve (12) factors developed by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) ("the Johnson factors"):

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

522 F.3d at 187 n. 3, 190. In sum, "in calculating the reasonable hourly rate for particular legal services, a district court should consider all relevant circumstances in concluding what a reasonable client would expect to pay." Id. at 184 n. 2. "The district court should then use that reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.'" Id. at 190.

"[T]he nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate." Arbor Hill, 493 F.3d at 184 n. 2. However, "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." Barfield, 537 F.3d at

8

152 (quoting <u>Farrar v. Hobby</u>, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)).

Under the "forum rule," "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." <u>Simmons</u>, 575 F.3d at 174 (quotations and citations omitted); <u>see also Bergerson</u>, 652 F.3d at 290 (accord). Thus, in determining a reasonable hourly rate, the court should consider the prevailing rates of lawyers with comparable skill, experience and reputation in the district in which the action was commenced and litigated. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 286, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989); <u>McDonald ex rel. Prendergast v. Pension Plan of NYSA-ILA Pension Trust Fund</u>, 450 F.3d 91, 96 (2d Cir. 2006). Rates should be "current rather than historic hourly rates." <u>Reiter v. MTA New York City Transit Auth.</u>, 457 F.3d 224, 232 (2d Cir. 2006) (quoting <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 882 (2d Cir. 1998)).

Recent prevailing hourly rates for attorneys practicing in the Eastern District of New York are: (a) between three hundred to four hundred fifty dollars ($300.00-$450.00) for partners in large law firms and attorneys with extensive litigation experience or significant experience in the particular area of law at issue, <u>see, e.g.</u> <u>Cohen v. Narragansett Bay Ins. Co.</u>, No. 14-cv-3623, 2014 WL 6673846, at * 3, n. 4 (E.D.N.Y. Nov. 24, 2014) (finding, <i>inter alia</i>, that an hourly rate of three hundred fifty dollars ($350.00) was a reasonable rate for an attorney who received his law degree approximately forty-one (41) years ago in a case that was not particularly complex); <u>Flanagan v. North Star Concrete Constr., Inc.</u>, No. 13-cv-2300, 2014 WL 4954615, at * 11 (E.D.N.Y. Oct. 2, 2014) ("Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour."); <u>Sass v. MTA Bus Co.</u>, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) (finding that "[r]ecent opinions issued by courts within the Eastern

District of New York have found reasonable hourly rates to be approximately $300-$450 for partners * * *" [quotations and citation omitted], and that an hourly rate of four hundred twenty-five dollars [$425.00] was reasonable for an attorney with thirty-three [33] years experience trying approximately five hundred [500] employment discrimination cases); Hugee v. Kimso Apts., LLC, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012) ("The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the [area of law at issue] and are recognized by their peers as leaders and experts in their fields"); (b) between two hundred to three hundred twenty-five dollars ($200.00-$325.00) for senior associates or attorneys with more limited experience, Cohen, 2014 WL 6673846, at * 3 n. 4 (finding that hourly rates of two hundred dollars ($200.00) and two hundred fifty dollars ($250.00) were reasonable for attorneys who received their law degrees approximately three (3) years ago and seven (7) years ago, respectively); Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension and Welfare Funds v. Thalle/Transit Constr. Joint Venture, No. 12-cv-5661, 2014 WL 5343825, at * 3 (E.D.N.Y. Oct. 20, 2014) ("[C]ourts in this district have concluded that approximately $200 to $300 is a reasonable hourly rate for senior associates[.]"); Sass, 6 F. Supp. 3d at 261 (finding that "[r]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately * * * $200-$325 for senior associates * * *[;]" that two hundred twenty-five [$225.00] is a reasonable hourly rate for an associate with four [4] years of experience; and that two hundred seventy-five dollars [$275.00] is a reasonable hourly rate for an associate with approximately seven [7] years experience litigating employment discrimination cases in state and federal court); and (c) between one hundred to two hundred dollars ($100.00-$200.00) for junior associates or

10

attorneys with little or no experience.  See, e.g. Trustees of Empire State, 2014 WL 5343825, at *

3 ("[C]ourts in this district have concluded * * * that $100 to $200 is a reasonable hourly rate for

[] junior associates[.]"); Sass, 6 F. Supp. 3d at 261 (finding that "[r]ecent opinions issued by

courts within the Eastern District of New York have found reasonable hourly rates to be

approximately * * * $100-$200 for junior associates[,]" and that one hundred seventy-five

dollars [$175.00] was a reasonable hourly rate for junior associates).  "Of course, in light of the

numerous factors that courts in this circuit consider to determine a reasonable hourly rate, 'the

range of "reasonable" attorney fee rates in this district varies depending on the type of case, the

nature of the litigation, the size of the firm, and the expertise of its attorneys.'"  Sheet Metal

Workers National Pension Fund v. Evans, No. 12-cv-3049, 2014 WL 2600095, at * 9 (E.D.N.Y.

June 11, 2014) (quoting Siracuse v. Program for Dev. of Human Potential, No. 07-cv-2205, 2012

WL 1624291, at * 30 (E.D.N.Y. Apr. 30, 2012)); see also Brown v. Green 317 Madison, LLC,

No. 11 CV 4466, 2014 WL 1237448, at * 8 (E.D.N.Y. Feb. 4, 2014), report and recommendation

adopted by 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014)  ("[B]illing rates in this district vary

widely depending on the nature and difficulty of the case and the experience of the attorneys

involved.")  Moreover, "the size and caliber of a firm may also be considered when determining

a reasonable hourly rate * * *."  Bobrow Palumbo Sales, Inc. v. Broan-Nutone LLC, 549 F. Supp.

2d 274, 280 (E.D.N.Y. 2008); see also Hugee, 852 F. Supp. 2d at 299 ("The size of the firm may

be considered [in determining a reasonable hourly rate], as large firms tend to charge higher

hourly rates than small firms.")

11

### 1.  Mr. Brooks

According to Mr. Brooks, (1) he has "over thirty [30] years experience representing people with disabilities[,]" (id., ¶ 7); (2) he was employed as an attorney for the Mental Hygiene Legal Service, Second Judicial Department between 1981 and 1988, and as a Clinical Professor of Law at Touro Law Center since 1988, (id.); and (3) he has "conducted a number of significant pieces of litigation" during both periods of his employment,[4] (id.).  In support of his request to be awarded attorney's fees at an hourly rate of four hundred fifty dollars ($450.00), Mr. Brooks submits, *inter alia*, (1) a declaration of Frederick K. Brewington, Esq., an attorney with approximately twenty-eight (28) years of experience who practices on Long Island, specializes in civil rights litigation and teaches, *inter alia*, trial practice techniques as an adjunct professor at Touro, (Declaration of Frederick K. Brewington, Esq. ["Brewington Decl."], ¶¶ 1, 2, 4-6); and (2) a declaration of Stuart Siris, Esq., an attorney with approximately twenty-four (24) years experience who practices in Nassau County "primarily in the areas of real estate and litigation."[5] (Declaration of Stuart Siris, Esq., ["Siris Decl."], ¶ 2).  Mr. Brewington avers, *inter alia*, that he

---

[4] In his résumé, Mr. Brooks identifies fourteen (14) cases, in addition to this case, that he has litigated, or is litigating, in federal court during the course of his twenty-six (26) years of employment at Touro, and four (4) cases that he litigated in state court during the course of his seven (7) years of employment at the Mental Hygiene Legal Service.  A search of the Eastern District of New York's Official Court Electronic Document Filing System ("ECF") reveals that Mr. Brooks has appeared as an attorney on fifty (50) cases filed in this Court since January 1990.

[5] An ECF search reveals that Mr. Siris has appeared as an attorney on nine (9) cases filed in this Court since September 1992, three (3) involving mortgage foreclosures, three (3) involving RICO claims, one (1) involving personal injury claims, and one (1) as counsel for a defendant in a case commenced by the United States.

12

has participated in "well over 220 reported cases,"[6] (Brewington Decl., ¶ 4), and that his "regularly charged hourly rate" is five hundred dollars ($500.00).[7] (Id., ¶ 8). Mr. Siris avers, *inter alia*, that the "current hourly rate that [he] charge[s] clients (who are not clients that repeatedly give [him] work) is $400."[8] (Siris Decl., ¶ 3).[9]

Defendant contends that Mr. Brooks's request to be awarded an hourly rate of four hundred fifty dollars ($450.00) is excessive.

Mr. Brooks does not have a usual hourly rate that he charges his clients, and, although he has apparently specialized in disabilities law since the outset of his legal career more than thirty (30) years ago, he does not have Mr. Brewington's experience litigating civil rights or discrimination claims in federal court. Moreover, the submission of declarations from two (2)

---

[6] An ECF search reveals that Mr. Brewington has appeared as an attorney on three hundred and one (301) cases filed in this Court since August 1987, approximately six (6) times the number of cases litigated by Mr. Brooks in this Court.

[7] In Luca v. County of Nassau, 698 F. Supp. 2d 296 (E.D.N.Y. 2010), the most recent case awarding attorney's fees to Mr. Brewington, the Honorable Frederic Block, United States District Judge, found the Mr. Brewington's requested hourly rate of four hundred dollars ($400.00) was reasonable "for an attorney of Brewington's caliber." Id. at 302.

[8] Mr. Siris also conclusorily avers that he is "familiar with prevailing rates charged by law firms in Nassau County," (Siris Decl., ¶ 2), and that "to [his] knowledge, the hourly rate that attorneys with over thirty (30) years of practice in Nassau County charge ranges from $400 to $500." (Id., ¶ 3). Since, *inter alia*, Mr. Siris does not indicate the basis of his knowledge, or whether attorneys who practice in Suffolk County, where Touro is located, charge similar rates, I do not afford those assertions any weight.

[9] Although plaintiff also submits declarations from five (5) other individuals in support of her motion for attorney's fees, I am "unpersuaded by [her] attempt to establish a higher hourly rate by submitting other attorneys' affidavits" regarding their opinions as to Mr. Brooks's experience, competence, etc. M.C. ex rel. E.C. v. Dep't of Educ. of City of New York, No. 12 Civ. 9281, 2013 WL 2403485, at * 7 (S.D.N.Y. June 4, 2013), report and recommendation adopted, 2013 WL 3744066 (S.D.N.Y. June 28, 2013).

attorneys who practice on Long Island, one (1) of whom practices only in Nassau County and specializes in a different area of the law than Mr. Brooks, and the other of whom is vastly more experienced in litigating civil rights and discrimination claims in federal court than Mr. Brooks, regarding the hourly rates that they typically charge their clients is insufficient to establish the prevailing rates that attorneys of Mr. Brooks's caliber demand in this district.

Furthermore, the original complaint asserted only one (1) claim by a single plaintiff against the NYSLRS, i.e., that "by failing to waive the filing requirements for filing of disability retirement benefits, defendant NYSLRS failed to provide a requested reasonable accommodation to [plaintiff]" in violation of the ADA, (Compl., ¶ 44), which, although novel, was not particularly complex or "undesirable."[10] Although plaintiff subsequently filed an amended complaint asserting two (2) additional causes of action against defendant, the only work performed by Mr. Brooks with respect to those additional claims was the drafting, editing and/or filing of the amended complaint itself. Nor were any unusual time limitations imposed in this case. To the contrary, the parties' repeated requests for extensions of time to act in this action were generally granted to the point of unreasonableness.

Nonetheless, Mr. Brooks achieved the very relief he sought for plaintiff in the amended complaint against the NYSLRS, i.e., reasonable accommodation for plaintiff in the form of a waiver of the three (3)-month period for filing disability retirement benefits. Accordingly, upon consideration of all of the Johnson factors, I find that an hourly rate of three hundred fifty dollars ($350.00) is a reasonable rate to award an attorney of Mr. Brooks's experience and competence

---

[10] In any event, the novelty of the case "would be reflected in the number of billable hours rather than in a lodestar adjustment." J.S. ex rel. Z.S. v. Carmel Cent. Sch. Dist., 501 F. App'x 95, 99 (2d Cir. 2012)

14

in this district. See, e.g. M.C. ex rel. E.C., 2013 WL 2403485, at * 6 (finding that three hundred seventy-five dollars [$375.00] was a reasonable hourly rate to award the supervising attorney of Fordham's Family Advocacy Clinic, which provided legal representation to the plaintiff through Lincoln Square Legal Services, in light of her credentials, i.e., her focus on family law since the outset of her approximately twenty-five [25]-year career and, specifically, on special education cases like the case at issue, and the fact that under her supervision, LSLS "has prevailed at every hearing since 2006.")[11]

### 2.    Mr. Recco

At the time he signed his declaration on July 15, 2014, Mr. Recco had been admitted to practice law in New York for approximately nine (9) months, (Declaration of Michael E. Recco ["Recco Decl."], ¶ 3), and was employed as a staff attorney at Touro's Civil Rights Litigation Clinic for approximately four (4) months, (see id., ¶¶ 1, 5). Prior to his employment at Touro, Mr. Recco worked as an associate at an insurance defense firm in Farmingdale, New York. (Id., ¶ 5). Accordingly, Mr. Recco is akin to a junior associate whose contribution to this case was limited to assisting in the preparation of the motion for attorney's fees, which is not a complex or novel issue. Since defendant does not oppose the one hundred fifty ($150.00) hourly rate requested for the work performed by Mr. Recco, Mr. Recco will be awarded attorney's fees at the rate requested.

---

[11] Prevailing rates for attorneys litigating cases in the Southern District of New York are "generally higher" than those for attorneys litigating cases in this district. In re Nassau County Strip Search Cases, 12 F. Supp. 3d 485, 497 (E.D.N.Y. 2014); see also Simmons, 575 F.3d at 177.

### 3.  Ms. LaRocco

Law students "are generally billed at rates similar to those of paralegals." Larsen v. JBC Legal Grp., P.C., 588 F. Supp. 2d 360, 364 (E.D.N.Y. 2008).  In this district, the average hourly rate awarded to paralegals and law student interns is seventy-five dollars ($75.00). Trustees of Local 7 Tile Indus. Welfare Fund v. Amarko Marble & Granite Co., Inc., No. 13-cv-2779, 2014 WL 1622098, at * 10 (E.D.N.Y. Apr. 22, 2014); see also Trustees of Empire State, 2014 WL 5343825, at * 3 (finding that courts in this district have concluded that eighty-five dollars [$85.00] to one hundred dollars [$100.00] is a reasonable hourly rate for paralegals); Nassau County Strip Search Cases, 12 F. Supp. 3d at 497 n. 8 (finding that the prevailing rate for paralegals in this district is between seventy dollars ($70.00) to ninety dollars ($90.00), but awarding nothing for work performed by interns and students); Said v. SBS Electronics, Inc., No. CV 08-3067, 2010 WL 1265186, at * 10-11 (E.D.N.Y. Feb. 24, 2010) (finding that an hourly rate of seventy dollars [$70.00] for work performed by a law student intern was reasonable). However, as defendant does not oppose the hourly rate of eighty-five dollars ($85.00) sought by plaintiff for work performed by Ms. LaRocco, that is the rate at which attorney's fees will be awarded for work performed by Ms. LaRocco.

### 4.  Rates for Travel

Although not raised by defendant, "courts in the Second Circuit often reduce attorneys' fees for travel time by 50 percent * * *." Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc., 881 F. Supp. 2d 482, 490 (S.D.N.Y. 2012); LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010) (accord); Germain v. County of Suffolk, 672 F. Supp. 2d

319, 326-27 (E.D.N.Y. 2009) (accord). Accordingly, Mr. Brooks will be compensated for his two and seven-tenths (2.7) hours of travel time on May 3, 2012 and July 15, 2014 at an hourly rate of one hundred seventy-five dollars ($175.00).

### B. Hours Reasonably Expended

Defendant contends that the hours that Mr. Brooks claims to have expended in litigating this action should be reduced because, *inter alia*, the billing entries (a) are vague, i.e., "no-detail," (Defendant's Memorandum of Law in Partial Opposition to Plaintiff's Application for Attorney's Fees ["Def. Mem."] at 2); (b) include "[c]ombined entries," (id. at 3), for work pertaining to claims against both defendants, including plaintiff's unsuccessful and distinct claims against the Library; and (c) contain "overlooked entries," (id. at 4), for work relating solely to plaintiff's unsuccessful claims against the Library that should have been excluded. According to defendant, utilizing the four hundred fifty dollar ($450.00) hourly rate that Mr. Brooks seeks, his "inappropriate" billing entries, (id. at 5), account for fifty-eight thousand six hundred and eighty dollars ($58,680.00), or approximately seventy-one percent (71%), of the total amount of eighty-two thousand eight hundred ninety dollars ($82,890.00) that he seeks to recover in the original motion.

"Applications for awards of fees must be documented by time records." Bliven, 579 F.3d at 213; see also McDonald, 450 F.3d at 96 ("In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials."); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("Applications for fee awards should generally be documented by contemporaneously created

17

time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.") "The time records submitted in support of an application for attorney's fees must be sufficiently detailed to determine the reasonableness of the hours claimed for any given task." Parrish v. Sollecito, 280 F. Supp. 2d 145, 171 (S.D.N.Y. 2003). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 432, 103 S. Ct. 1933.

"[O]nly those hours 'reasonably expended' are to be awarded." McDonald, 450 F.3d at 96 (quoting Hensley, 461 U.S. at 434-35, 103 S. Ct. 1933). In determining the amount of hours reasonably expended, the court must:

> "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts. * * * In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties. (Citations omitted)."

Gierlinger, 160 F.3d at 876; see also Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997) ("In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.")

"[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from the attorney's fee calculation. See Hensley, 461 U.S. at 434, 103 S.Ct. 1933; see also Bliven, 579 F.3d at 213; Kirsch, 148 F.3d at 173. In addition, "[c]ourts may reduce the number of hours in a

18

fee application where the time entries submitted by counsel are too vague to sufficiently document the hours claimed." Barclays Capital Inc. v. Theflyonthewall.com, No. 06 Civ. 4908, 2010 WL 2640095, at * 4 (S.D.N.Y. June 30, 2010); see also Tucker v. City of New York, 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) ("[F]ee applications must be accompanied by contemporaneous time records * * * which must adequately identify the general subject matter of the work that the attorney did during each time slot. * * * This requirement is generally not satisfied by vague entries such as 'conference with' or 'call to' a specified person * * *, although the court may be able to deduce the nature and relevance of a generally described time entry based on its familiarity with the case or other contextual clues."); LV, 700 F. Supp. 2d at 526 (holding that entries that omit information about the subject matter of the work, e.g., "meeting w/co-counsel" and "conference w/co-counsel," justify a reduction in the hours expended); Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (holding that entries such as "letter to [opposing counsel]," "telephone call to [opposing counsel]" and "discussion with [opposing counsel]" are "overly vague" and "[t]hus courts commonly make percentage reductions for [them].")

"Courts may also make reductions for 'block-billing,' that is, the practice of 'aggregating multiple tasks into one billing entry[,]" Barclays Capital, 2010 WL 2640095, at * 4 (quoting Adorno v. Port Auth. of N.Y. & N.J., 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010), reconsideration granted on other grounds, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010) (citation omitted)); see also Linde v. Arab Bank, PLC, 293 F.R.D. 138, 142 (E.D.N.Y. 2013) ("Where billing records include a large number of block-billed entries and there is an issue as to the reasonableness of the number of hours counsel spent on the matter, an across-the-board reduction in billing hours is

appropriate"), because "block-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." Linde, 293 F.R.D. at 142; see also LV, 700 F. Supp. 2d at 525 (holding that since "block-billing can make it exceedingly difficult for courts to assess the reasonableness of the hours billed[,] * * * courts have found it appropriate to cut hours across the board by some percentage."); Miroglio, 629 F. Supp. 2d at 313-14 ("Block entries * * * have a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary. * * * Reductions are appropriate based on such entries as well." (quotations, alterations and citations omitted)). Nonetheless, "[w]hile 'block-billing' is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited as long as the court can determine the reasonableness of the work performed." Adorno, 685 F. Supp. 2d at 515.

Moreover, "work on an unsuccessful claim [based on different facts and legal theories than the successful claim(s)] cannot be deemed to have been expended in pursuit of the ultimate result achieved * * * and therefore no fee may be awarded for services on the unsuccessful claim." Hensley, 461 U.S. at 435, 103 S. Ct. 1933 (quotations and citation omitted); see also Kirsch, 148 F.3d at 173 ("A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories[.]" (quotations and citation omitted)).

In reducing the amount of attorney's fees, the court may exclude the excessive and unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in the amount of hours. See McDonald, 450 F.3d at 96 ("A district court may exercise its

20

discretion and use a percentage deduction as a practical means of trimming fat from a fee application (quotations and citation omitted)); Kirsch, 148 F.3d at 173 (accord).

1.    Billing Entries of Mr. Brooks

Many of Mr. Brook's billing entries are vague. For example, Mr. Brooks billed: (a) three-tenths (.3) of an hour, or eighteen (18) minutes, for a telephone call with Harry C. regarding "miscellaneous case matters;" (b) two-tenths (.2) of an hour, or twelve (12) minutes, for drafting a letter to "James Carmel" for an unidentified reason; (c) fourteen and eight-tenths (14.8) hours for "work[ing] on memo of law in opposition to defendants' motions to dismiss;" (d) fifty-five and a half (55.5) hours for "work[ing] on" (i) "appeal - all claims," (ii) "appellate brief - all claims," (iii) "appellate brief - state claims," and/or (iv) "appellate brief," plus an additional two and one-tenth (2.1) hours for "work[ing] on corrected copy of brief;" (e) more than one and nine-tenths (1.9) hours for unspecified "legal research" relating to either "all claims" or plaintiff's claims against the NYSLRS for her reply brief on the appeal[12]; (f) twenty-eight and three-tenths (28.3) hours for "work[ing] on" plaintiff's claims against the NYSLRS for her reply brief on the appeal, plus an additional ten and a half (10.5) hours to edit "all claims" in the reply brief; (g) one-tenth (.1) of an hour for "[m]eeting with M Artusio - oral argument - all claims;" (h) two and a half (2.5) hours for unspecified "Legal research; letter to court;" (i) two and six-tenths (2.6) hours for "Legal research - fees application; wroked [sic] on WMB reply declaraiton [sic];" (j) two and seven-tenths (2.7) hours for "Legal research; work[ing] on reply memo of law - fees

---

[12]  Since Mr. Brooks "block billed" one and one-tenth (1.1) hours for "[r]ead[ing] appellees' briefs; legal research - all claims" on November 22, 2011, the Court cannot ascertain the exact amount of time he actually spent performing the unspecified legal research.

application;" (k) eight (8) hours for "work[ing] on" the reply memorandum of law or brief; and

(l) one and eight-tenths (1.8) hours for "work[ing] on memo of law and WMB relply [sic]

declaration." [13] See, e.g. Kirsch, 148 F.3d at 172-73 (affirming the district court's finding that

billing entries, *inter alia*, merely indicating "letter to court" or "work on motion" "are too vague

to sufficiently document the hours claimed"); Custodio v. American Chain Link & Constr., Inc.,

No. 08 Civ. 7148, 2014 WL 116147, at * 15 (S.D.N.Y. Jan. 13, 2014) (finding that a "research

law" billing entry "without any further description as to what law or laws were researched," was

impermissibly vague); Harley v. Nesby, No. 08 Civ. 5791, 2012 WL 1537881, at * 12 (S.D.N.Y.

May 2, 2012) (reducing attorney's fees for vague billing entries reflecting correspondence or

telephone calls "concerning generalized subject matters or legal research that was conducted

concerning generalized subject matters"); Larsen, 588 F. Supp. 2d at 364-65 (reducing attorney's

fees for vague billing entries merely indicating that counsel engaged in a telephone call or

correspondence with another person or the Court, without detailing the subject matter of the call

or correspondence); Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006)

---

[13] In his reply declaration, Mr. Brooks attempts to cure some of the deficiencies in the time records he submitted in support of his request for attorney's fees. For example, he submits the letter that he sent to James Carmel dated February 4, 2010 to cure the vagueness of his billing entry for that date, and he identifies M. Artusio as "another clinical professor of law" with whom he met to "discuss[] strategy in this case." (Brooks Reply, ¶ 7). "However, it was not proper for [Mr. Brooks] to submit, for the first time in [his] reply to the [NYSLRS's] challenge to [his] fee application, evidence and arguments justifying the reasonableness of the fees sought." Bravia Capital Partners, Inc. v. Fike, 296 F.R.D. 136, 144 (S.D.N.Y. 2013). Plaintiff "was obligated, in her initial moving papers, not in her reply, to provide evidence supporting the reasonableness of * * * the hours expended by her counsel [in the case]." Id. By raising these arguments and evidence for the first time in her reply, plaintiff deprived the NYSLRS of an opportunity to challenge the reasonableness of those entries on other grounds. Indeed, meetings and conferences to discuss strategy have, themselves, been found to be impermissibly vague. See, e.g. Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007); Anderson v. Rochester-Genesee Reg'l Transp. Auth., 388 F. Supp. 2d 159, 166 (W.D.N.Y. 2005).

(finding that entries for "work on motion for summary judgment," absent further explanation, were unacceptably vague); <u>Anderson</u>, 388 F. Supp. 2d at 166 (holding that "generalized references to work on 'brief[s]' and 'affidavit[s]' and to 'prepar[ing]' for conferences, oral arguments, etc." are "impermissibly vague" (brackets in original) and that "[w]ithout some * * * explanation of what issues were being researched, * * * it is difficult to know whether th[e] time was reasonably spent."); <u>Parrish</u>, 280 F. Supp. 2d at 171 (holding that billing entries that merely characterize "the type of work done, without specifying the purpose and specific subject matter of the task," such as "Research" and "Drafting, Research", "are insufficiently particular * * * [and] do not contain enough information for the Court to ascertain whether a reasonable amount of time was spent on each task described.")

Moreover, several of Mr. Brooks's billing entries contain "block billing," <u>e.g.</u> on July 14, 2014, Mr. Brooks billed two and eight-tenths (2.8) hours for telephone calls to six (6) people and drafting "WMB declaration" and another two and three-tenths (2.3) hours for telephone calls to two (2) more people and "work[ing] on WMB declaration; memo of law."

Mr. Brooks concedes that he is not entitled to recover any time expended for performing services relating to plaintiff's unsuccessful claims against the Library; that he failed to omit five (5) such entries, totaling four and one-tenth (4.1) hours, from his billing records; and that four and one-tenth (4.1) hours should be excluded from his billing entries. (Brooks Reply, ¶¶ 15-16).

Furthermore, of the fifty-five and a half (55.5) hours billed by Mr. Brooks for work he performed on plaintiff's appellate brief[14], thirty-four and two-tenths (34.2) of those hours were

---

[14] The three (3) hours plaintiff failed to omit for Mr. Brooks's "work[] on appellate brief - Library claims" on June 17, 2011 and August 18, 2011, are excluded from the total number of hours Mr. Brooks billed for working on the appellate brief.

billed for work on "all claims," including the Library's claims. Indeed, five (5) pages of the thirty-five (35)-page appellate brief relate solely to plaintiff's unsuccessful claims against the Library. Similarly, all of Mr. Brooks's billing entries pertaining to his "work[] on" the joint memorandum of law that he filed with respect to defendants' respective motions to dismiss fail to distinguish between the work he performed with respect to plaintiff's claims against the NYSLRS and the work he performed with respect to plaintiff's unsuccessful claims against the Library, yet the last seven (7) pages of that thirty-one (31)-page joint memorandum of law pertain only to plaintiff's unsuccessful claims against the Library.[15]

In light of the aforementioned deficiencies in Mr. Brooks's billing entries, the one hundred ninety-five and nine-tenths (195.9) hours[16] for which he seeks to be compensated at a full hourly rate are reduced across-the-board by twenty percent (20%), i.e., to one hundred fifty-six and seventy-two one-hundredths (156.72) hours. Accordingly, plaintiff is awarded attorney's

---

[15] In his declaration in reply to defendant's opposition, Mr. Brooks explains that "[i]n keeping the time sheets, when appropriate [he] noted instances when work was done specifically for the claims against either * * * [NYSLRS] or [the Library][,] [but] [w]hen work could not be broken down and attributed to one defendant or another, such as writing the Statement of the Case or Statement of Facts in a brief, [he] simply noted work was done on a particular document. Accordingly, when [he] stated that work was done on a brief and attributed to the state, it meant that [he] worked on the legal argument addressing the claim against NYSLRS." (Reply Declaration of William M. Brooks ["Brooks Reply"], ¶ 5). Accepting that contention, however, leads to the implausible conclusion that Mr. Brooks did not bill for any time spent "working on" the seventeen (17) pages of legal argument in the joint memorandum of law he submitted in opposition to the NYSLRS's and Library's respective motions to dismiss and billed fourteen and eight-tenth (14.8) hours for "working on" only the seven (7) pages of the brief pertaining to plaintiff's claims against both defendants, i.e., the Preliminary Statement, Relevant Statutory and Administrative Schemes, Statement of Facts and Standards Governing a Motion to Dismiss.

[16] The total number of hours excludes the four and one-tenth (4.1) hours plaintiff failed to omit for work performed by Mr. Brooks on plaintiff's unsuccessful claims against the Library, and the two and seven-tenths (2.7) hours of travel time on May 3, 2012 and July 15, 2014, for which Mr. Brooks will be compensated at a rate of one hundred seventy-five dollars ($175.00).

24

fees in the amount of fifty-four thousand eight hundred fifty-two dollars ($54,852.00) for the services Mr. Brooks performed at a full hourly rate, which, as set forth above, is three hundred fifty dollars ($350.00), and four hundred seventy-two dollars and fifty cents ($472.50) for Mr. Brooks's two and seven-tenths (2.7) hours of travel time.

### 2. Billing Entries of Mr. Recco

Although not challenged by defendant, I find that plaintiff has not established the reasonableness of Mr. Recco's billing entries. Mr. Recco bills fourteen and four-tenths (14.4) hours for researching, drafting and editing the seven (7)-page memorandum of law in support of plaintiff's motion for attorney's fees.[17] The memorandum of law contains only three (3) pages of legal argument supported by citations to only ten (10) cases. In addition, Mr. Brooks also billed seven and a half (7.5) hours for "work[ing] on" the seven (7)-page memorandum of law regarding the issue of attorney's fees. Accordingly, I find Mr. Recco's billing entries to be excessive and redundant and, as such, reduce them across-the-board by fifty percent (50%), i.e., to seven and two-tenth (7.2) hours. Therefore, plaintiff is awarded attorney's fees in the amount of one thousand eighty dollars ($1,080.00) for the services Mr. Recco performed on her behalf in this case.

### 3. Billing Entries of Ms. LaRocca

Although not challenged by defendant, I find that plaintiff has not established the

---

[17] The seventh (7th) page consists of a one (1)-sentence conclusion; the date; Mr. Brooks's signature, address and telephone number; and "Michael Recco On the Brief."

reasonableness of Ms. LaRocca's billing entries. Ms. LaRocca's billing entries improperly bill more than two and three-tenths (2.3) hours for "assigned reading."[18] In addition, Ms. LaRocca's billing entries are vague and grossly excessive, e.g., she bills three and three-tenths (3.3) hours for reading two (2) cases on September 9, 2013; she "block bills" four and a half (4.5) hours for "Mary Jo C. Complaint, research, called Chris Cohen" on September 12, 2013 and two and a half (2.5) hours for "Mary Jo C. Complaint, wrote questions for Chris Cohen, called Chris Cohen" on September 16, 2013; and she bills more than sixty-three and one-tenth (63.1) hours for reading, drafting, researching and editing the "Mary Jo C. complaint," which the Court presumes is the fifteen (15)-page *amended* complaint filed on December 9, 2013.[19] Based upon (a) the unreasonableness of Ms. LaRocca's billing entries, i.e., even a ninety percent (90%) reduction in the total number of hours billed by Ms. LaRocca would permit her to bill almost eight (8) hours for drafting a fifteen (15)-page *amended* complaint, which is more than the six and four-tenths (6.4) hours Mr. Brooks billed for drafting the original twelve (12)-page complaint[20]; and (b) the fact that Mr. Brooks is awarded attorney's fees for the two and nine-tenths (2.9) hours he billed

---

[18] Since Ms. LaRocco "block billed" four (4) hours for "[a]ssigned reading, and complaint draft" on August 22, 2013, the Court cannot ascertain the exact amount of time she improperly billed for "assigned reading."

[19] Again, since Ms. LaRocco "block billed" four (4) hours for "[a]ssigned reading, and complaint draft" on August 22, 2013, the Court cannot ascertain the exact amount of time she billed on that date for drafting the amended complaint.

[20] Of the seventy (70) factual allegations in the amended complaint, twenty-seven (27) are essentially the same as the original complaint, albeit with some minor revisions such as changing the plaintiff's age and omitting certain allegations regarding the Library, etc. Two (2) of the (6) legal allegations are also essentially the same as the original complaint. Thus, approximately forty percent (40%) of the amended complaint contained allegations from the original complaint, for which Mr. Brooks had only billed six and four-tenths (6.4) hours to draft.

for editing the amended complaint at more than four (4) times the hourly rate plaintiff seeks for Ms. LaRocca's services, the branch of plaintiff's motion seeking to recover attorney's fees for work performed by Ms. LaRocca on her behalf in this case is denied.

II.    CONCLUSION

For the reasons set forth above, plaintiff's motion for attorney's fees pursuant to 42 U.S.C. §§ 1983 and 12205 is granted to the extent that plaintiff is awarded attorney's fees in the total amount of fifty-six thousand four hundred four dollars and fifty cents ($56,404.50). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.                    s/ Sandra J. Feuerstein

                                                   SANDRA J. FEUERSTEIN
                                                   United States District Judge

Dated: December 18, 2014
       Central Islip, New York